# Tab 2.

## BERKS LANDFILL SITE

### Entities and Time Period

- Black & Decker, through its Hampstead, Maryland plant.

- Waste oil was allegedly hauled from Black & Decker's Hampstead, Maryland plant for disposal at Berks Site in Berks County, Pennsylvania through A&A Waste Oil in 1973.

- No evidence that Black & Decker had any involvement at Berks Site prior to 1973.

### Policies

- The Black & Decker policies for the period beginning 1973 all containing pollution exclusion.
- No Black & Decker policies implicated prior to 1973 because only evidence of any alleged connection between Black & Decker and Berks Site did not begin until 1973.

### Applicable Law

- According to this Court's order of October 30, 1998 and its May 17, 2002 Memorandum and Order, Maryland law applies to the Black & Decker policies.

### Undisputed Material Facts

- Black & Decker named as third party defendant in action filed on September 16, 1992.
- Black & Decker dismissed from lawsuit in August, 1993.
- Black & Decker notified Liberty Mutual of lawsuit on March 3, 1994

### No Coverage, As A Matter of Law

1. Pollution exclusion bars coverage – no sudden & accidental discharge.

   No Policies are implicated prior to 1973 and, accordingly, only Policies containing the pollution exclusion are at issue. As there has been no sudden and accidental event, there is no coverage.

- The earliest that the Defendants assert that Black & Decker's waste was shipped to the site is 1973. As such, there could not be any alleged "property damage" resulting from those shipments until after the first shipment date.

- Defendants mistakenly and erroneously contend that because the shipments to Berks came from Black & Decker in Maryland, the Maryland deletion endorsement applies. This argument must be rejected.

2. No recovery for pre-tender defense costs.

Any defense costs were incurred prior to the tender of the claim to Liberty Mutual and only defense costs are at issues at the site, so there can be no recovery.

- The Defendants concede that "Black & Decker was named in a third-party complaint filed on September 16, 1992" and that "in August 1993, it was dismissed from the lawsuit without prejudice."

- Furthermore, the Defendants admit that they did not notify Liberty Mutual of the claim until March 3, 1994.

- Accordingly, at the time the Defendants notified Liberty Mutual there was no defense to be tendered because the lawsuit had already been dismissed.

### References for this site:

1. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 2A(Black & Decker Policies)
2. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 7 (Pleadings and related Documents))
3. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 12 (Secondary Evidence)
4. Exhibits to Liberty Mutual's Motion and Supporting Memorandum for Summary Judgment – Binder 26 Tier II Sites)
5. Exhibits to Liberty Mutual's Opposition to Defendant's Motion for Partial Summary Judgment – Binder 28 (Supporting Documentation)

6. Exhibits to Liberty Mutual's Supplemental Submission in support of its Motion for Summary Judgment with respect to BROS, Berks Landfill, Huth Oil and Ansonia/Derby Sites – Binder 30 (Supporting Documentation)

7. Appendix to Black & Decker's Motion for Summary Judgment – App. XXXI, XXXII (Berks Site Documents Vol. 1-2)

# 1929632_v1

# Tab 3.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART INDUSTRIES, INC., )<br>)<br>Defendants. ) | C.A. No. 96-10804-DPW |

----------------------------------------------------------------

**MOTION AND SUPPORTING MEMORANDUM OF LIBERTY MUTUAL
<u>INSURANCE COMPANY FOR SUMMARY JUDGMENT</u>**

----------------------------------------------------------------

Ralph T. Lepore, III, Esq.
Robert A. Whitney, Esq.
Kenneth R. Brown, Esq.
Warner & Stackpole LLP
75 State Street
Boston, MA 02109
(617) 951-9000

By the time Liberty Mutual received notice by letter dated December 13, 1994, Emhart had already settled the claim with the MDNR and there was nothing that Liberty Mutual could do. As set forth in the Augat case, the decision of USM to pay the settlement amount was "voluntary" because USM had an alternative; it had the right to demand that Liberty Mutual defend the claim and assume the obligation to pay for USM's portion of the clean up. Nevertheless, USM failed to exercise this right and therefore the voluntary payment clause removes the clean-up cost from the scope of coverage under the policy. See Augat, 410 Mass. at 122.

### E.    The Berks Landfill Site, Berks County, Pennsylvania

#### 1.    Factual Background and Allegations of Contamination at the Site

This site, a landfill located in Berks County, Pennsylvania, was the subject of the 1991 action United States v. Berks Associates, Inc. which was initiated by the government to seek remediation cost recovery under CERCLA. On October 9, 1992, 32 Defendants in the Berks Associates litigation filed a third-party complaint against Black & Decker and 184 other third-party Defendants seeking contribution for $5 million in past response costs and future costs. It was alleged that in 1973, A&A Waste Oil, Inc. ("A&A") transported waste oil to the site, some portion of which may have originated at Black & Decker's facility in Hampstead, Maryland. Defendants' Int. Responses, Tier II Appendix, at 16 and 19 (Binder 8, at Tab 1).

On August 17, 1993, Black & Decker was dismissed from the lawsuit without prejudice due to lack of evidence linking the company's waste to the site. Id. at 22.

2.    **There Is No Coverage Under The Black & Decker Policies With Respect To Any Alleged Property Damage At The Site**

a)    **There Is No Coverage For Any Defense Costs Incurred Prior To The Tender Of The Claim To Liberty Mutual**

In the action at bar, the defendant's broker, Alexander & Alexander, did not notify Liberty Mutual with respect to Black & Decker's involvement at the Berks Landfill Site until 1994. See Letter from Michael Margiotta, Alexander & Alexander, dated March 3, 1994 (Binder 26, at Tab E-1). The Defendants maintain that they are not seeking any indemnity payments from Liberty Mutual with respect to this site, and are only seeking the reimbursement of attorneys' fees incurred in defense of Black & Decker's involvement in the Berks Associates action. Defendants' Statement Pursuant to Order of July 29, 1996 at 35 (Binder 7 at Tab 4).

Under Massachusetts law, an insurer has no duty to defend an insured absent a request by the insured to do so and the insurer's obligations under an insurance contract are ordinarily triggered only when the insured tenders the defense of an action potentially within the policy coverage. See Fanaras Enterprises, Inc. v. Law Offices of Roger Alan Doane, et al., Massachusetts Superior Court, No. 87-2612, slip op. at 7 (Superior Court held that insurance company's duty to defend is not "triggered" until policyholder tenders the claim to the carrier). With respect to the Berks Landfill Site, no "tender" was made to Liberty Mutual with respect to the defense of Black & Decker until after Black & Decker had already been dismissed from the lawsuit. As such, when Liberty Mutual was first notified on March 3, 1994, of Black & Decker's purported involvement at the Berks Landfill Site, there was no "suit" pending for which Liberty Mutual could provide a defense. The fees had been incurred and Liberty Mutual was merely being asked to reimburse Black & Decker for the same without ever having an opportunity to

participate -- or even monitor -- the defense. No reimbursement of defense costs is therefore owed to the Defendants.

b)      **The Pollution Exclusion Contained In The Black & Decker Policies Precludes Coverage For Any Alleged Contamination At The Site**

There is no coverage under any of the Black & Decker policies at issue with respect to any alleged property damage at the Berks Landfill Site because none of the pollution at issue at the site was the result of any "sudden and accidental" release. See SCA Services, 412 Mass. at 336-338; Employers' Insurance of Wausau, 41 Mass. App. Ct. at 24. Because the Defendants have failed to meet their burden of establishing any sudden and accidental release at the Berks Landfill Site which resulted in the environmental contamination, summary judgment is properly awarded to Liberty Mutual. The earliest that the Defendants assert that Black & Decker's waste was shipped to the site in 1973. As such, there could not be any alleged "property damage" resulting from those shipments until after the first shipment date. Therefore, the only Black & Decker policies that allegedly could be at issue with respect to any property damage at the Berks Landfill Site would be those Black & Decker policies in effect in 1973 and thereafter.

During this time period, the insurance policies provided to Black & Decker by Liberty Mutual all contained the pollution exclusion with the sudden and accidental exception. There can be little doubt, however, that the leakage and spills at the Berks Landfill Site which caused contamination, resulted from the long-term operations and routine and deliberate business activities which took place at the site, and accordingly those routine discharges were neither "accidental" nor "sudden." Indeed, Lester Schurr, a former employee of Berks Associates who worked at the site, testified that there were spills and leaks taking place at the Berks Landfill

facility for many, many years which occurred as routine activities at the facility. Deposition of Lester Schurr, dated October 7, 1997 ("Shurr Dep.") at 33-50 (Binder 26, at Tab E-2).

The only "sudden and accidental" release that the Defendants apparently even point to in an attempt to satisfy their burden of demonstrating coverage under the Liberty Mutual insurance policies, is the alleged overflow of waste oil lagoons reportedly caused by Hurricane Agnes. See Schurr Dep. at 37-43. Mr. Schurr further testified that immediately after the flood, the government came in and did an extensive cleanup of the area. Id. at 41-42. There is no dispute, however, that the materials allegedly sent to the site by A&A, which may or may not have included waste oils originated at the Black & Decker Hampstead, Maryland facility, were not delivered to the site until 1973, a year after the hurricane.

As such, even if intemperate weather is considered to be "sudden and accidental," any property damage purported to have resulted from the hurricane could not have included any waste oil materials sent to the site by Black & Decker. To the extent that property damage in the form of environmental contamination is claimed to have taken place after 1973, which would have included the waste oil from Black & Decker, there is no evidence whatsoever that any such contamination was caused by the "sudden and accidental" releases. In fact, the evidence is only of long-term, operational leaks and discharges.

### F.    The Fort Wayne Reduction Site, Fort Wayne, Indiana

#### 1.    Factual Background And Allegations Of Contamination At The Site

From 1967-1976, waste generated by facilities owned by the Gripco Fastener Division of the Mite Corporation in Montpelier, Indiana, and South Whiteley, Indiana, allegedly was

## IX.    CONCLUSION

For the reasons stated above, Liberty Mutual requests that the Court grant its motion for summary judgment in its favor with respect to its Complaint and the Defendants' Counterclaim.


## REQUEST FOR ORAL ARGUMENT


**LIBERTY MUTUAL INSURANCE COMPANY**

By its attorneys,

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Kenneth R. Brown (BBO #557052)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA 02109
(617) 951-9000

DATED:  February 9, 1998


## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the Defendants' counsel, Attorney Jack Pirozzolo, Willcox, Pirozzolo & McCarthy, 50 Federal Street, Boston, MA 02110, by hand.

Kenneth R. Brown

February 9, 1998

# Tab 4.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY,    )
                                     )    CIVIL ACTION
        Plaintiff,                   )    NO. 96-10804-DPW
                                     )
v.                                   )
                                     )
THE BLACK & DECKER CORPORATION,      )
BLACK & DECKER INC.,                 )
BLACK & DECKER (U.S.) INC.,          )
EMHART CORPORATION and               )
EMHART, INC.,                        )
                                     )
        Defendants.                  )
                                     )

MEMORANDUM OF BLACK & DECKER
IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGEMENT

February 9, 1998

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

PROTECTED INFORMATION

By Order of Court, this
envelope is to remain sealed
and the Clerk of this Court
shall not reveal the contents
thereof to any person other
than the Court or attorneys of
record for the parties until
further order of this Court.

It may be that, since Maryland has deleted the
pollution exclusion, its regulatory authorities were not
affected by the representations of the insurance industry
that led New Jersey and other states to accept the estoppel
argument.  However, if Maryland required the deletion
because it recognized the broad scope of the exclusion,
that is all the more reason why the deletion should be
applied.  Certainly, if a New Jersey insured is protected
by the courts from misrepresentations made to its
regulatory body, a Maryland insured should be equally
protected if its regulatory body recognized the danger and
acted to prevent it.  Liberty Mutual should not benefit
from Maryland's action by avoiding both the deletion and
the impact of the misrepresentations it made.

B.    Underline Douglassville

1.    Underline Underlying Claim

Douglassville was an oil reclamation facility
located in Pennsylvania near the Schuylkill River. (App.
XXXI:145).  The underlying litigation with respect to this
site began on July 31, 1991, when the United States filed a
CERCLA action, United States v. Berks Associates, Inc. et
al., Civil Action No. 91-4868 ("Berks"), in the United
States District Court for the Eastern District of
Pennsylvania (App. XXXI:138-153; see also id. at 041).  The

defendants included A&A (App. XXXI:142). The complaint
alleged that Berks and its predecessors operated the site
"between approximately 1941 and 1985 to process waste oil
and waste solvents" (App. XXXI:145) and that certain
defendants, including A&A, "arranged for hazardous
substances to be disposed or and/or treated" at the site
"[b]eginning in or about 1941" (Id.; see also id. at 142).
Black & Decker was named in a third-party complaint filed
on September 16, 1992 (App. XXXI:099-133, particularly at
108). Neither that complaint nor subsequent amended third-
party complaints suggest the dates when Black & Decker
waste was allegedly transported to the Douglassville site
(App. XXXI:001-153). Black & Decker's alleged link to the
site is through its Hampstead, Maryland plant's use of A&A
(App. XXXII:136). There has been no evidence that Black &
Decker waste ever reached the site.

Black & Decker "opted in" to the Settlement Track
procedures at this site (App. XXXII:143). Subsequently, in
August 1993, it was dismissed from the lawsuit without
prejudice, upon motion of the third-party plaintiffs, due
to lack of evidence linking the company's waste to the site
(App. XXXII:145).

2.   <u>Liberty Mutual Failure to Defend</u>

The underlying complaint alleges that
Douglassville was in operation between 1941 and 1985 (App.
XXXI:145), which includes years of Liberty Mutual coverage
where there was no pollution exclusion in the policies.
When Black & Decker notified Liberty Mutual of the BROS
claim on March 3, 1994, it advised Liberty Mutual of this
claim as well (<u>see</u>, App. XXXI:189-207).   Liberty Mutual
acknowledged this notice on April 20, 1994 (App. XXXI:208-
211).   In fact, Liberty Mutual was aware of the site, and
of potential claims from insureds with respect to it, well
before Black & Decker's involvement.   <u>See</u>, <u>e.g.</u>, memorandum
of John Vlastelin, regarding site history and
recommendation to deny all claims based upon a
"manifestation" trigger (App. XXXII:138-139).   As was
noted, <u>supra</u>, that trigger has been repeatedly rejected in
the course of environmental insurance litigation.   Liberty
Mutual did not furnish reasons for its failure to defend
this claim in the statement it filed with this Court (<u>see</u>,
App. XXIII:001-059).

In view of the allegations in the underlying
complaints, which set forth the history of the site
beginning in 1941, there is no basis for Liberty Mutual to
invoke the pollution exclusion with respect to this site.

Its duty to defend, based upon the allegations of the complaint, is clear. Extrinsic evidence, and, in particular, evidence of disastrous floods at the site, further establishes Liberty Mutual's obligation to defend this claim (App. XXXII:007).

> 3.   Evidence Relating to Black & Decker

Mr. Goldstein of A & A believed there were dealings between A & A and Berks Associates, the owner of the Douglassville site, in the 1960's or 1970's (App. XXIX:028). H. Lester Schurr, who worked at the facility from 1942 through 1985 and managed it in the later years (App. XXXII:093), believed the two companies had dealings in the late 1970's (App. XXXII:099-100). A Berks customer log lists A&A as a customer (App. XXIX:129-142; see also App. XXXII:105). An A & A hauling log covering several months in 1973 lists Black & Decker as a customer (App. XXX:065, 068, 070, 072, 074, 076, 080, 082, 084, 085, 086, 088, 091, 093, 097, 098, 099, 101, 103, 105, 108, 111, 112, 114, 116, 119, 120, 121, 122, 124, 125, 128), but does not disclose where the Black & Decker waste oil was collected or where it was taken (App. XXIX:065-128). As discussed in connection with BROS, A & A hauled waste oil from Black & Decker's Hampstead Maryland site for periods beginning as early as the 1960's.

4.   Site History

Mr. Schurr testified that waste material from the processing operations was placed in lagoons, which were constructed between 1945 and approximately 1970 (App. XXXII:093-094). He also described procedures designed to recapture oil which was inadvertently spilled or which was deposited in the lagoons because it had not been reclaimed in the initial reprocessing operations (App. XXXII:094-095). Further, he also testified to the general operations of the facility, describing, for example, procedures designed to recapture oil which was inadvertently spilled or which was not reclaimed in the initial reprocessing operations. Id. He stated that the facility operations were legal, were in accordance with industry standards, were state of the art, and utilized patented processes at the leading edge of technology (App. XXXII:102).

In 1970, the site was flooded by ten days of heavy rains, which caused the lagoons to overflow, thereby spilling large quantities of sludge onto the site (App. XXXII:098-099). Two to three million gallons of sludge were released (App. XXXII:007). The EPA began to clean the lagoons. Id. Two years later, during Hurricane Agnes, the Schuylkill River covered much of the site in a catastrophic flood, sweeping the materials in the lagoons into the river

or onto the surrounding ground (App. XXXII:098-099). Six

to eight million tons of sludge were released by Hurricane

Agnes (App. XXXII:007). In 1983, the site was placed on

the EPA's National Priority List (App. XXXII:009)

### 5. Liberty Mutual Was Required To Defend

As with BROS, there is no reason for Liberty

Mutual to have refused to defend this claim. The

allegations in the underlying complaint were sufficient to

mandate a defense. As the extrinsic evidence shows, with

respect to Douglassville, the "potentiality" of a "sudden

and accidental" event is more than theoretical. The site

was ravaged by two catastrophic floods. Under any

construction the "sudden and accidental" exception to the

pollution exclusion would apply.

### C. Huth

### 1. The Underlying Claim

This claim relates to the Huth waste oil

reclamation facility in Cleveland, Ohio, a site in

operation from 1938 through 1990. Several PRPs who

remediated the site commenced a cost recovery action,

Centerior Service Co. et al. v. Allied-Signal Inc. et al.,

Civil Action No. 1:94 CV 1590 (consolidated as 1:94 CV

1588) ("Centerior"), filed on August 4, 1994, in the United

States District Court for the Northern District of Ohio

seeks rulings from this Court that are consistent with the law of Connecticut with respect to those claims and sites governed by the law of that jurisdiction and, with respect to Massachusetts, rulings which distinguish between interpreting an arguably ambiguous insurance policy provision from creating an estoppel arising out of dishonest conduct by an insurance carrier in the regulatory process and its public posture.

For these reasons the defendants, the Black & Decker group, pray for partial summary judgment on the issues and claims that have been briefed here.

Respectfully submitted,

February 9, 1998

Jack R. Pirozzolo, BBO #400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

240

# Tab
# 5.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
————————————————————————  )
                          )
LIBERTY MUTUAL INSURANCE  )
COMPANY,                  )
                          )
            Plaintiff,    )
                          )
v.                        )      CIVIL ACTION
                          )      NO. 96-10804-DPW
THE BLACK & DECKER        )
CORPORATION, BLACK & DECKER )
INC., BLACK & DECKER (U.S.) )
INC., EMHART CORPORATION,  )
and EMHART, INC.,          )
                          )
            Defendants.    )
————————————————————————  )
```

COPY

OPPOSITION OF LIBERTY MUTUAL INSURANCE COMPANY
TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Ralph T. Lepore, III (BBO #294420)
Robert A. Whitney (BBO #545675)
Kenneth R. Brown (BBO #557052)
Karen R. Sweeney (BBO #557050)
Peter J. Duffy (BBO #566682)
WARNER & STACKPOLE LLP
75 State Street
Boston, MA 02109
(617) 951-9000

Based on the foregoing, the Defendants' Motion for Summary Judgment must be denied as to the A-1 Disposal Site. Moreover, summary judgment must enter in favor of Liberty Mutual.

### E.    The Berks Landfill Site (a/k/a "Douglassville"), Berks County, Pennsylvania

Liberty Mutual is entitled to summary judgment as to the Berks Landfill Site, referred to by the Defendants by its uncommon name "Douglassville", because: (1) any defense costs were incurred prior to the tender of the claim to Liberty Mutual and only defense costs are at issue at the site; and (2) any contamination at the Berks Landfill Site was not a result of a sudden and accidental event or events within the meaning of the exception to the pollution exclusion. Liberty Mutual's Memorandum at 221-223.

The facts set forth in by the Defendants bolster Liberty Mutual's position that all defense costs were incurred prior to the tender of the claim to Liberty Mutual. The Defendants concede that "Black & Decker was named in a third-party complaint filed on September 16, 1992" and that "in August 1993, it was dismissed from the lawsuit without prejudice." Defendants' Memorandum at 159. Furthermore, the Defendants admit that they did not notify Liberty Mutual of the claim until March 3, 1994. Id. at 160. Accordingly, at the time the Defendants notified Liberty Mutual there was no defense to be tendered because the lawsuit had already been dismissed.

Based on the foregoing, Defendants' Motion for Summary Judgment must be denied as to the Berks Site, and summary judgment must enter in favor of Liberty Mutual.