# Tab 6.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LIBERTY MUTUAL INSURANCE COMPANY, )

        Plaintiff, )

v. )

THE BLACK & DECKER CORPORATION, )
BLACK & DECKER INC., )
BLACK & DECKER (U.S.) INC., )
EMHART CORPORATION and )
EMHART, INC., )

        Defendants. )

CIVIL ACTION
NO. 96-10804-DPW

FURTHER MEMORANDUM IN SUPPORT
OF BLACK & DECKER MOTION FOR
SUMMARY JUDGMENT WITH RESPECT
TO BLACK & DECKER SITES
(BROS, DOUGLASSVILLE AND HUTH)

November 13, 1998

Jack R. Pirozzolo, BBO# 400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Attorney for Defendants

**PROTECTED INFORMATION**

By Order of Court, this
envelope is to remain sealed
and the Clerk of this Court
shall not reveal the contents
thereof to any person other
than the Court or attorneys of
record for the parties until
further order of this Court.

While it is clear that waste oil moved from A&A to the BROS site, there is no evidence of the origin of that oil.

### (3) Connection Between Black & Decker And A&A

There is evidence that A&A collected waste oils from Black & Decker but no evidence regarding the disposition of that oil. Howard Goldstein testified that his father founded A&A in the late 1950's, that he started to work for his father when he was sixteen (or no later than 1968), and that he picked up waste oil at the Black & Decker Hempstead plant when he was still a teenager (App. XXIX:029).

The only A&A log which has been produced dates from 1973, and it shows that there were pick-ups at Black & Decker during that year (App. XXIX:027; see e.g., App. XXIX:065). Black & Decker's interrogatory responses also refer to a relationship between Black & Decker and A&A in the 1970's, particularly as alleged by the BROS PRP group engaged in settlement track negotiatons (App. XXI:045).

### C. Douglasville/Berks

### 1. The Underlying Claim

The United States filed a CERCLA action, United States v. Berks Associates, Inc. et al., Civil Action No. 91-4868, in the United States District Court for the Eastern District of Pennsylvania (App. XXXI:138-153). A&A was named a defendant in that action. Black & Decker was brought into the litigation by

a third party complaint filed on September 16, 1992 (App. XXXI:
099-132).

The initial complaint alleged that the site "was
operated by Berks . . . and its predecessors between
approximately 1941 and 1985 to process waste oil and waste
solvents" and that transportation of hazardous substances to the
site began in 1941 (App. XXXI:145). Neither the third party
complaint nor a subsequent amended third-party complaint suggest
the dates when Black & Decker waste was allegedly transported to
the site (App. XXXI:001-153).

Black & Decker "opted in" to the Settlement Track
procedures at the site (App. XXXII:143-144). Subsequently, it
was dismissed from the lawsuit without prejudice, upon motion of
the third-party plaintiffs, due to lack of evidence linking its
waste to the site (App. XXXII:145-147).

2. Extrinsic Evidence

a. The Site

H. Lester Schurr, who worked at the Berks facility
from 1942 through 1985 and who managed it in the later years
(App. XXXII:093), testified in a deposition taken in this case.
He explained that waste material from the processing operations
was placed in lagoons, which were constructed between
approximately 1945 and approximately 1970 (App. XXXII:093-094).
According to Mr. Schurr, Berks was a state of the art facility

utilizing patented processes at the leading edge of technology
(App. XXXII:102). The facility utilized procedures to recapture
oil which was deposited in the lagoons because it had not been
reclaimed in the initial reprocessing operations (App.
XXXII:094-95, 102).

     In 1970 the site was flooded by ten days of heavy
rains, which caused two to three million gallons of waste to
spill onto the site (App. XXXII:007, 098-099). The decision was
made to dispose of all waste remaining in the lagoons (App.
XXXII:007). Two years later, before the disposal plan could be
implemented, Hurricane Agnes struck, and the Schuylkill River
inundated the site in a catastrophic flood, releasing six to
eight million gallons of waste (App XXXII:007, 098).

     b.  <u>Connection Between A&A And The Berks Site</u>

     Howard Goldstein of A&A testified he believed there
were dealings between A&A and Berks Associates, owner of the
Douglassville site, in the 1960's or 1970's (App. XXIX:028,
029). A log shows dealings beginning at least as early as 1968
(App. XXXII:100, 107). Mr. Schurr, who, as noted above, ran the
Berks facility for a period ending in 1985, believed the two
companies had dealings in the late 1970's (App. XXXII:099-100).

     c.  <u>Connection Between Black & Decker And A&A</u>

     Evidence regarding the relationship between Black &
Decker and A&A, as set forth in connection with BROS, also

pertains to this site.  As with BROS, there is evidence that A&A begin hauling waste oil from Black & Decker as early as the 1960's but no evidence that the waste oil from Black & Decker was taken to the Berks site.

D.    Huth

1.    The Underlying Claim

Black & Decker was named as a defendant in a cost recovery action relating to the Huth site, Centerior Service Co. et al. v. Allied-Signal Inc. et al., Civil Action No. 1:94CV1590, filed on August 4, 1994, in the United States District Court for the Northern District of Ohio (App. XXXIII:001-005).  The plaintiffs' claims are extremely vague even by modern pleading standards.  The complaint contained no allegations concerning the nexus between Black & Decker and the site.  Plaintiffs did not even identify the Black & Decker facility whose waste was allegedly shipped to Huth.  One count has been dismissed, subject to an interlocutory appeal, and the other count remains pending (App. XCIV, Hwang Affidavit).

In their complaint, the plaintiffs alleged that a waste oil reclamation facility was operated at the Huth site between 1938 and 1990 (App. XXXIII:003).  All allegations relating to the defendants, including Black & Decker, are set forth in the most general terms, with no suggestion of either the nature of, or timing of, their involvement.

the mutual benefit of both insurer and insured." <u>Id</u>.  Instead,
Liberty Mutual seeks to benefit from the weakness of the
underlying claim while leaving its insured to fend for itself.
Liberty Mutual's attempt to use a "groundless" claim argument to
avoid defending a claim to which it has no colorable coverage
defenses[6] is indicative of its utter failure to honor its
obligations to the Black & Decker Group with respect to the
insurance claims at issue in this litigation.

## IV.  CONCLUSION

Summary judgment should be granted for Black & Decker
on the BROS, Douglasville/Berks, and Huth claims.  Liberty
Mutual's motion should be denied.  If, for some reason, the
Court finds it necessary to go beyond the allegations in the
complaining documents and to consider arguments of Liberty
Mutual based upon extrinsic evidence, the extrinsic evidence, at
most, raises questions of fact requiring trial.

Respectfully submitted,

Jack R. Pirozzolo BBO#400400
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts  02110
(617) 482-5470

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail hand on  11/13/98

_____

_____

[6]    As shown above, Liberty Mutual's relies upon a pollution exclusion
defense while conceding the very facts which show its argument is baseless.
In other words, Liberty Mutual's pollution exclusion defense in Huth rests on
no evidence whatsoever.

# Tab 7.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> THE BLACK & DECKER CORPORATION, BLACK & DECKER INC., BLACK & DECKER (U.S.) INC., EMHART CORPORATION, and EMHART INDUSTRIES, INC., <br><br> Defendants. | C.A. No. 96-10804-DPW |

--------------------------------------------------------------------------------

## SUPPLEMENTAL MEMORANDUM SUPPORTING LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BROS, BERKS LANDFILL, HUTH OIL, ANSONIA AND DERBY SITES

--------------------------------------------------------------------------------

Ralph T. Lepore, III, Esq.
Robert A. Whitney, Esq.
Kenneth R. Brown, Esq.
Peter J. Duffy, Esq.
HOLLAND & KNIGHT LLP
18 Tremont Street
Boston, MA 02108
(617) 619-9200

## I.    Introduction

Pursuant to the request of the Court made at the continued hearing on the cross-motions for summary judgment on October 30, 1998, the plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual"), respectfully submits this Supplemental Memorandum in further support of its Motion For Summary Judgment with respect to the BROS, Berks Landfill[1], Huth Oil, Ansonia and Derby Sites and in opposition to the Defendants' motion for partial summary judgment.

At the first hearing on the cross-motions for summary judgment in this case on May 18, 1998, this Court ruled that: (i) Maryland law governs all claims for insurance coverage under the Black & Decker line of insurance policies at issue; and (ii) Connecticut law governs all claims for insurance coverage under Farrel line of insurance policies at issue.  Furthermore, at the continued hearing on the cross-motions for summary judgment of October 30, 1998, this Court requested that the parties provide supplemental briefing with respect to: (i) the application of Maryland law to the BROS, Berks Landfill and Huth Oil Sites for which Defendants have made claims under the line of insurance policies issued to the "Black & Decker Manufacturing Company" ("Black & Decker"); and (ii) the application of Connecticut law to the Ansonia and Derby Sites for which Defendants have made claims under the line of insurance policies issued to the "Farrel Company" ("Farrel").[2]  Accordingly, Liberty Mutual hereby respectfully submits this Supplemental Memorandum.

---

[1]      In their papers, Defendants also refer to the Berks Landfill by its uncommon name "Douglasville".  See, e.g., Defendants' Further Memorandum in Support of Summary Judgment as to Black & Decker Sites at 1.

[2]      In this litigation, the Court has been asked to determine whether coverage exists under certain existing and alleged Liberty Mutual policies for the Defendants' defense and indemnification costs claimed in connection with 29 allegedly contaminated sites.  Of the 29 contaminated sites at issue, however, only 13 implicate the Black & Decker and Farrel lines of insurance coverage.  The Sites implicating the Black & Decker line of insurance coverage are: (1) BROS Site, Logan Township, NJ; (2) Berks Landfill Site, Berks County, PA; (3) Huth Oil Services Site, Cleveland,

the others set forth herein, summary judgment in favor of Liberty Mutual should be entered as to all underlying claims against the Defendants arising out of the BROS Site.

      **2.**        **The Berks Landfill (a/k/a Douglasville), Berks County, Pennsylvania**

            **a.**        **Factual Background and Allegations of Contamination at the Site**

This Site, a landfill located in Berks County, Pennsylvania, was the subject of the 1991 action <u>United States v. Berks Associates, Inc.</u> which was initiated by the government to seek remediation cost recovery under CERCLA. On October 9, 1992, 32 Defendants in the <u>Berks Associates</u> litigation filed a third-party complaint against Black & Decker and 184 other third-party defendants seeking contribution for $5 million in past response costs and future costs. It was alleged therein that in 1973, A&A Waste Oil, Inc. ("A&A") transported waste oil to the Site, some portion of which may have originated at Black & Decker's facility in Hampstead, Maryland. Defendants' Int. Responses, Tier II Appendix, at 16 and 19 (Binder 8, at Tab 1).

On August 17, 1993, Black & Decker was dismissed from the lawsuit without prejudice due to lack of evidence linking the company's waste to the Site. <u>Id.</u> at 22. In this action at bar, the Defendants maintain that they made no "remediation" payments, and that they expended $33,700.00 in defense costs. Defendants' September 6, 1996 Statement at 35 (Binder 30, at Tab 3).

            **b.**        **There Is No Coverage Under The Black & Decker Policies With Respect To Any Alleged Property Damage At The Site**

                **i.**        **There Is No Coverage Because There Was No Valid Tender Of The Claim To Liberty Mutual**

In the action at bar, Defendants' broker, Alexander & Alexander, did not notify Liberty Mutual with respect to Black & Decker's involvement at the Berks Landfill Site until March 3,

1994. See Letter from Michael Margiotta, Alexander & Alexander, dated March 3, 1994 (Binder 26, at Tab E-1). The Defendants maintain that they are not seeking any indemnity payments from Liberty Mutual with respect to this Site, and are only seeking the reimbursement of attorneys' fees incurred in defense of Black & Decker's involvement in the Berks Associates action. Defendants' September 6, 1996 Statement at 35 (Binder 30, at Tab 3).

Under Maryland law, an insurer has no duty to defend an insured absent a request by the insured to do so and the insurer's obligations under an insurance contract are ordinarily triggered only when the insured tenders the defense of an action potentially within the policy coverage. See discussion, supra, in Section V(A)(1); Washington, 60 Md. App. at 297, 482 A.2d at 507. With respect to the Berks Landfill Site, no "tender" was made to Liberty Mutual with respect to the defense of Black & Decker until almost seven months after Black & Decker had already been dismissed from the lawsuit. As such, when Liberty Mutual was first notified on March 3, 1994, of Black & Decker's purported involvement at the Berks Landfill Site, there was no "suit" pending for which Liberty Mutual could provide a defense. The fees now sought from Liberty Mutual had already been incurred and Liberty Mutual was merely being asked to reimburse Black & Decker for the same without ever having an opportunity to participate -- or even monitor -- the defense. No reimbursement of defense costs is therefore owed to the Defendants.

**ii.    The Pollution Exclusion Contained In The Black & Decker Policies Precludes Coverage For Any Alleged Contamination At The Site**

There is no coverage under any of the Black & Decker policies at issue with respect to any alleged property damage at the Berks Landfill Site because none of the pollution at issue at the Site was the result of any "sudden and accidental" release. See discussion, supra, in Section V(A)(2)(b); ARTRA, 338 Md. at 589-90, 659 A.2d at 1309-10. Because the Defendants have

-55-

failed to meet their burden of establishing any sudden and accidental release at the Berks Landfill

Site which resulted in the environmental contamination, summary judgment is properly awarded

to Liberty Mutual. The earliest that the Defendants assert that Black & Decker's waste was

shipped to the Site is 1973. As such, there could not be any alleged "property damage" resulting

from those shipments until after the first shipment date. Therefore, the only Black & Decker

policies that allegedly could be at issue with respect to any property damage at the Berks Landfill

Site would be those Black & Decker policies in effect in 1973 and thereafter.

　　　　As discussed previously, during this time period, the insurance policies provided to Black

& Decker by Liberty Mutual all contained the pollution exclusion with the sudden and accidental

exception. There can be little doubt, however, that the leakage and spills at the Berks Landfill

Site which caused contamination, resulted from the long-term operations and routine and

deliberate business activities which took place at the Site, and accordingly those routine

discharges were neither "accidental" nor "sudden." Indeed, Lester Schurr, a former employee of

Berks Associates who worked at the Site, testified that there were spills and leaks taking place at

the Berks Landfill facility for many, many years which occurred as routine activities at the

facility. Deposition of Lester Schurr, dated October 7, 1997 ("Shurr Dep.") at 33-50 (Binder 26,

at Tab E-2).

　　　　The only "sudden and accidental" release that the Defendants apparently even point to in

an attempt to satisfy their burden of demonstrating coverage under the Liberty Mutual insurance

policies, is the alleged overflow of waste oil lagoons reportedly caused by ten days of heavy rain

in 1970 and by Hurricane Agnes in 1972. See Defendants' Further Memorandum in Support of

Summary Judgment as to Black & Decker Sites at 37; Schurr Dep. at 37-43. Mr. Schurr further

testified that immediately after Hurricane Agnes, the government came in and did an extensive

cleanup of the area. Id. at 41-42. There is no dispute, however, that the materials allegedly sent to the Site by A&A, which may or may not have included waste oils originated at the Black & Decker Hampstead, Maryland facility, were not delivered to the Site until 1973, a year after the alleged "overflows."[15]

### 3. The Huth Oil Services Site, Cleveland, Ohio

#### a. Factual Background And Allegations Of Contamination At The Site

The Huth Oil Services Site is a waste oil reclamation facility and is operated by the Huth Oil Service Company ("Huth Oil") in Cleveland, Cuyahoga County, Ohio. By letter dated April 6, 1994, Huth Oil PRP Group made up of Huth Oil Services Company, Ashland Chemical Company, General Electric Company and Cleveland Electric Illuminating Company, requested that Black & Decker voluntarily participate with the Group in investigating the Site, and requested that Black & Decker pay towards the cost of alleged remediation of activities at the Site. See Letter from D. Dumas of Thomas, Mine & Flory, counsel to the Huth Oil PRP Group to H. Rodgville, Black & Decker, dated April 6, 1994 (Binder 26, at Tab H-1). The letter indicated that if Black & Decker chose not to pay the requested amount, it would be joined in a suit. Black & Decker has alleged that it received an apparent "receipt and ledger sheet" from Huth Oil that indicated that an unknown Black & Decker facility paid Huth Oil $300 on January 20, 1970 for unknown services; Black & Decker however, denies ever shipping any oil wastes to the Huth Oil Services Site. Defendants' Statement Pursuant to Order of July 29, 1996

---

[15]     Even if the "overflow" were to be considered "sudden and accidental," any property damage purported to have resulted from the hurricane could not have included any waste oil materials sent to the site by Black & Decker. To the extent that property damage in the form of environmental contamination is claimed to have taken place after 1973, which would have included the waste oil from Black & Decker, there is no evidence, or allegations for that

## VII.    Conclusion

For the reasons stated above, Liberty Mutual requests that the Court grant its Motion for

Summary Judgment with respect to its Complaint and the Defendants' Counterclaim, and deny

the Defendants' Motion for Partial Summary Judgment.

**LIBERTY MUTUAL INSURANCE COMPANY**

By its attorneys,

Ralph T. Lepore, III BBO 294420
Robert A. Whitney BBO 545675
Kenneth R. Brown BBO 557052
Peter J. Duffy BBO 566682
HOLLAND & KNIGHT LLP
18 Tremont Street
Boston, MA 02108
(617) 619-9200

DATED:  December 1, 1998

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 1998 a true copy of the above document
was served upon the Defendants' counsel, by hand.

Robert A. Whitney

# Tab 8.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,<br>    Plaintiff and Defendant in<br>    Counterclaim, | )<br>)<br>) | CIVIL ACTION NO.<br>96-10804-DPW |
| | ) | |
| v. | )<br>) | |
| | ) | |
| THE BLACK & DECKER CORPORATION,<br>BLACK & DECKER INC.,<br>BLACK & DECKER (U.S.) INC.,<br>EMHART CORPORATION, AND<br>EMHART INDUSTRIES, INC.,<br>    Defendants and<br>    Counterclaimants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

# D R A F T

**MEMORANDUM AND ORDER**
May 17, 2002

# D R A F T

Settlement Proposal, Defs.' Vol. XXVIII at 79; Deposition of
Howard J. Goldstein (Goldstein Dep.) at 7-15, Defs.' Vol. XXIX at
24-26; Defs.' Answers to First Interrogs., Tier I App., at 3.)
On December 17, 1992, the defendants received notice to
participate in a court-sponsored settlement of the CERCLA action
based on their status as a generator of waste transported by A&A
to the BROS site.  (BROS Settlement Proposal, Defs.' Vol. XXVIII
at 79.)  With respect to this claim, the defendants paid
$5,492.87 in remediation and claim defense costs of $435,817.34.
(Defs.' SOF, BROS ¶¶ 11-12, at 17.)

      b.  <u>Douglassville, Berks County, PA</u> - The Douglassville
claim also involves an oil reclamation facility located in Berks
County, Pennsylvania, to which oil waste produced by Black &
Decker was transported by A&A in 1973.  (Defs.' Answers to First
Interrogs., Tier II App., at 16; Berks Complaint ¶¶ 41-44, at
145-46.)  The initial CERCLA action was commenced by the United
States in 1991 in the Eastern District of Pennsylvania.  (<u>See</u>
Berks Complaint.)  Black & Decker was named as a defendant in a
third party complaint filed on September 16, 1992, by, among
others, A&A.  (Berks Third Party Complaint, Defs.' Vol. XXXI at

---

transportation must have occurred between 1973 and 1979.  (Defs.'
Answers to First Interrogs., Tier I App., at 3.)  In their
memorandum of law, they argue that A&A began transporting waste
oil "at least by the late 1960's."  (Defs.' Mem. at 135.)  The
plaintiff claims in its memorandum that the defendants "conceded"
that A&A picked up waste oil from them from 1973 to 1982.  (Pl.'s
Mem. at 152.)

99.)  In August 1993, Black & Decker was dismissed from the lawsuit by an order of the court.  (Dismissal Order, Defs.' Vol. XXXII at 145.)  While the defendants did not incur any settlement or remediation payments, they claim defense costs of $60,050.42. (Defs.' SOF, Douglassville ¶ 10, at 19.)

     c.  <u>Cleveland, OH</u> - The final environmental claim pertaining to Black & Decker also involves an oil reclamation facility--the Huth Oil Services ("Huth") site in Cleveland, Ohio.  The Huth site allegedly operated from approximately 1938 until 1990. (Huth Complaint ¶ 10, Defs.' Vol. at 3.)  During 1990-1993, several parties participated in the cleanup of the Huth site pursuant to an administrative order by the EPA.  (<u>Id.</u> ¶¶ 14-15.) These parties then filed a cost recovery action under CERCLA against three defendants, including Black & Decker, who allegedly produced waste that was disposed of at the Huth site.  (<u>Id.</u> ¶ 23.)  The allegations in the complaint are vague, failing to describe the link between Black & Decker and the Huth site.  The defendants contend that they produced no waste that was sent to the Huth site, but did indicate that the alleged waste could be linked to a Black & Decker plant in Kent, Ohio, which was closed in 1940.[21]  (Defs.' Answers to First Interrogs., Tier II App., at

---

[21] The plaintiff contends in its memorandum that the defendants admitted that they received in discovery in the Huth case a document that indicated Black & Decker made a payment to Huth in 1970 for unknown services.  (Pl.'s Mem. at 236-37.)  I have been unable to locate such a document or an averment by the

# Tab 9.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | C.A. No. 96-10804-DPW |
| ) | |
| THE BLACK & DECKER CORPORATION,    ) | |
| BLACK & DECKER INC., BLACK & DECKER    ) | |
| (U.S.) INC., EMHART CORPORATION and    ) | |
| EMHART INDUSTRIES, INC.,    ) | |
| ) | |
| Defendants.    ) | |

## JOINT SUPPLEMENTAL SUBMISSION

Pursuant to this Court's Procedural Order of May 17, 2002, the parties jointly file this supplemental submission, first, addressing proposed modifications to this Court's Draft Memorandum and Order on the pending cross-motions for summary judgment, and second, providing this Court with an updated Status Report, including anticipated further proceedings.

In recognition of the Court's Order that this not be an argumentative submission, the parties have withheld argument concerning each other's proposed changes to the Court's draft Order, and await the Court's invitation, if appropriate, to set forth reasons they believe the matter proposed by the opposing party is

apparently transported waste oil produced by Black & Decker to the BROS facility from approximately 1973 to 1979.  Black & Decker was never named as a defendant in either the <u>Rollins</u> or the <u>Allied-Signal</u> lawsuits."

**Defendants' suggested change**:  p. 34, line 19 - replace "approximately 1973 to 1979" with "during part of the period 1973 to 1979 and, possibly, earlier periods."

**Plaintiff's suggested change**:  p. 35, lines 4-7 – change to "On December 17, 1992, defendants received a letter inviting them to participate in a voluntary, informal, non-litigated settlement/mediation process of the CERCLA action based on their status as a generator of waste transported by A&A to the BROS site."  (<u>See</u> Hyatt letter at 1, Binder 19, at Tab 6)."

**Defendants' suggested change**:  p. 35, line 6 -  replace "a generator" with "an alleged generator."

**Agreed suggested change**:  p. 35, lines 8-10 – delete the phrase "With respect to this claim", and rephrase as "Defendants claim that as of the time of the filing of the summary judgment motions, they paid $5,492.87 in remediation costs and defense costs of $435,817.34 with respect to the BROS Site, and that they subsequently incurred additional costs."

(b)    <u>Douglassville, Berks County, PA</u>

**Agreed suggested change**:  p. 35, lines 13-14 – add "allegedly" after Black & Decker.

**Plaintiff's suggested change**:  p. 36, lines 1-2 – change "In August 1993, Black & Decker was dismissed from the lawsuit by an order of the court.  (Dismissal Order, Defs.' Vol. XXXII at 145)" to "Black & Decker was dismissed from the lawsuit on August 17, 1993 due to lack of evidence linking B&D's wastes to the site." (Pl.'s Response to SOF, citing Defs.' Interrog. Answers, Tier II App. at 22 (Binder 8, at Tab 1)."

**Plaintiff's suggested change**:  p. 36, lines 3-4 -  at the end of line 4, add: "All of the alleged defense costs claimed

by defendants were incurred prior to defendants' tender of the defense of the Berks Landfill claim to Liberty Mutual by letter dated March 3, 1994. (LM's MSJ at 221 (citing Binder 26 at Tab E-1); LM's Opp. at 77 (citing B&D's MSJ at 160)). Also, defendants had already been dismissed from the third-party contribution lawsuit by the time they tendered defense of that lawsuit to Liberty Mutual. (LM's MSJ at 221; LM's Opp. at 77; LM's Supp. Memo at 55).

(c)    <u>Cleveland, OH (Huth)</u>

**Agreed suggested change:** p. 36, lines 7-8 – change "an oil reclamation facility" to a "waste oil reclamation facility"

**Plaintiff's suggested change:** p. 36, lines 8-9 – delete "approximately", changing "The Huth site allegedly operated from approximately 1938 until 1990" to "The Huth site allegedly operated from 1938 to 1990" (<u>See</u> Defs.' 11/13/98 Supp. Mem. at 14, citing <u>Centerior v. Allied-Signal</u> complaint [referred to by the Court as the "<u>Huth</u> complaint"]).

**Agreed suggested change:** p. 36, line 10 – insert "XXXIII" between "Vol." and "at".

**Plaintiff's suggested change:** p. 36, lines 10-12 – following the sentence ending on line 12, add: "By letter dated April 6, 1994, the Huth Oil PRP Group, made up of Huth Oil Services Company, Ashland Chemical Company, General Electric Company and Cleveland Electric Illuminating Company, requested that Black & Decker voluntarily participate with the Group in investigating the site, and requested that Black & Decker pay towards the cost of alleged remediation activities at the site. The letter indicated that if Black & Decker chose not to pay the requested amount, it would be joined in a suit. (<u>See</u> LM's MSJ at 236-37, citing 4/6/94 letter at Binder 26, Tab H-1). The demand made upon Black & Decker by the Huth Oil PRP Group specifically referenced the $300 payment made by an unknown Black & Decker facility on January 20, 1970, to Huth Oil for 'unknown services.' No other demand against Black & Decker with respect to any

early in this action, that it was Liberty Mutual that commenced the action to seek

an adjudicated resolution. Black & Decker has embraced this position and, absent

Liberty Mutual's  payment of the claim, wishes that adjudication.


LIBERTY MUTUAL INSURANCE
COMPANY

By its Attorneys,


_R(l 7 on_

Ralph T. Lepore, III (BBO #294420)
Janice Kelley Rowan (BBO #265520)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated:  July 24, 2002

Respectfully submitted,

THE BLACK & DECKER
CORPORATION, ET ALS.

By their Attorneys,


_Jack P Piozzlo (AL) (per telephone at mrdn)_

Jack R. Pirozzolo (BBO #400400)
Richard L. Binder (BBO # 043240)
WILLCOX, PIROZZOLO &
MCCARTHY
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470


**CERTIFICATE OF SERVICE**

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.

Dated: 7-24-02

# Tab 10.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER INC., BLACK & DECKER )<br>(U.S.) INC., EMHART CORPORATION and )<br>EMHART INDUSTRIES, INC., )<br><br>Defendants. ) | C.A. No. 96-10804-DPW |

## REVISED JOINT SUPPLEMENTAL SUBMISSION

Pursuant to the Court's request at the conference on August 1, 2002, the parties file this Revised Joint Supplemental Submission setting forth proposed modifications to the Court's Draft Memorandum and Order dated May 17, 2002, along with brief statements of the rationale for objecting to the other party's proposed changes in the Court's draft Order. For the convenience of the Court, these responses appear in italics following the suggested change to which the response relates.

The Revised Joint Supplemental Submission also contains, in Part Two, a Status Report describing anticipated further proceedings, which was contained in the Joint Supplemental Submission as originally filed with the Court on July 24, 2002. Pursuant to the Court's August 2, 2002 Notice of

**Defendants' suggested change:**  p. 34, line 19 -  replace "approximately 1973 to 1979" with "during part of the period 1973 to 1979 and, possibly, earlier periods."

### *Plaintiff's response to defendants' suggested change:*

*Defendants have not cited any evidence in the record concerning the "possibly, earlier periods" alleged in defendants' suggested change.*

**Plaintiff's suggested change:**  p. 35, lines 4-7 – change to "On December 17, 1992, defendants received a letter inviting them to participate in a voluntary, informal, non-litigated settlement/mediation process of the CERCLA action based on their status as a generator of waste transported by A&A to the BROS site." (See Hyatt letter at 1, Binder 19, at Tab 6)."

### *Response to plaintiff's suggested change above:*

*This suggested change mischaracterizes the Hyatt letter. The Court's finding is correct in noting that the process was court-sponsored.*

**Defendants' suggested change:**   p. 35, line 6 -  replace "a generator" with "an alleged generator."

### *Plaintiff's response to defendants' suggested change:*

*Plaintiff does not object to defendants' suggested change.*

**Agreed suggested change:**  p. 35, lines 8-10 – delete the phrase "With respect to this claim", and rephrase as "Defendants claim that as of the time of the filing of the summary judgment motions, they paid $5,492.87 in remediation costs and defense costs of $435,817.34 with respect to the BROS Site, and that they subsequently incurred additional costs."

b)    <u>Douglassville, Berks County, PA</u>

**Agreed suggested change:**  p. 35, lines 13-14 – add "allegedly" after Black & Decker.

**Plaintiff's suggested change:**  p. 36, lines 1-2 – change "In August 1993, Black & Decker was dismissed from the lawsuit by an order of the court. (Dismissal Order, Defs.' Vol. XXXII at 145)" to "Black & Decker was dismissed from the lawsuit on August 17, 1993 due to lack of evidence linking B&D's wastes to the site." (Pl.'s Response to SOF, citing Defs.' Interrog. Answers, Tier II App. at 22 (Binder 8, at Tab 1)."

### *Response to plaintiff's suggested change above:*

*This suggested change consists of immaterial detail and wordsmithing. The Court's statement is correct. The grounds for the order of dismissal are not relevant.*

**Plaintiff's suggested change:** p. 36, lines 3-4 - at the end of line 4, add: "All of the alleged defense costs claimed by defendants were incurred prior to defendants' tender of the defense of the Berks Landfill claim to Liberty Mutual by letter dated March 3, 1994. (LM's MSJ at 221 (citing Binder 26 at Tab E-1); LM's Opp. at 77 (citing B&D's MSJ at 160)). Also, defendants had already been dismissed from the third-party contribution lawsuit by the time they tendered defense of that lawsuit to Liberty Mutual. (LM's MSJ at 221; LM's Opp. at 77; LM's Supp. Memo at 55).

**Response to plaintiff's suggested change above:**

*There is no tender requirement. As discussed at pp. 5-7 of the Black & Decker Supplemental Submission Regarding the Newly Raised Issues of Notice and Tender, filed on January 7, 1999, the Liberty Mutual assertion about the archaic and discredited notion of "tender" was based on a federal court attempting to predict Illinois law, notwithstanding that the Illinois Supreme Court subsequently held that there is no requirement of tender in <u>Cincinnati Companies v. West American Insurance Co.</u>, 701 N.E.2d 499, 504 (Ill. 1998). To the extent that Liberty Mutual is suggesting that pre-notice attorney fees are not recoverable, Maryland law, which the Court held is applicable, provides that pre-notice attorney's fees are recoverable. <u>Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.</u>, 347 Md. 32 (1997).*

c)    <u>Cleveland, OH (Huth)</u>

**Agreed suggested change:** p. 36, lines 7-8 – change "an oil reclamation facility" to a "waste oil reclamation facility"

**Plaintiff's suggested change:** p. 36, lines 8-9 – delete "approximately", changing "The Huth site allegedly operated from approximately 1938 until 1990" to "The Huth site allegedly operated from 1938 to 1990" (<u>See</u> Defs.' 11/13/98 Supp. Mem. at 14, citing <u>Centerior v. Allied-Signal</u> complaint [referred to by the Court as the "<u>Huth</u> complaint"]).

**Response to plaintiff's suggested change above:**

*This suggested change consists of wordsmithing.*

**Agreed suggested change:** p. 36, line 10 – insert "XXXIII" between "Vol." and "at".

- 39 -

LIBERTY MUTUAL INSURANCE
COMPANY

By its Attorneys,

_____
Ralph T. Lepore, III (BBO #294420)
Janice Kelley Rowan (BBO #265520)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700


Respectfully submitted,

THE BLACK & DECKER
CORPORATION, et al.

By their Attorneys,

_____
Jack R. Pirozzolo (BBO #400400)
Richard L. Binder (BBO # 043240)
WILLCOX, PIROZZOLO &
MCCARTHY
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470


Dated: August 15, 2002

BOS1 #1269231 v1


I hereby certify that a true copy of the
above document was served upon the
attorney of record for each other party
by mail-hand on ___8/15/02___
_____